**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

DWIGHT TOUSSAINT,

                              Plaintiff,

                v.                                   9:23-CV-974 (LEK/DJS)

DEREK RUMSEY[1],

                              Defendant.

---

**APPEARANCES:**                                          **OF COUNSEL:**

DWIGHT TOUSSAINT
18-A-0543
Plaintiff, *pro se*
Lakeview Shock Incarceration Correctional Facility
P.O. Box T
Brocton, New York 14716

HON. LETITIA JAMES                                OLIVIA COX, ESQ.
New York State Attorney General
Counsel for Defendant
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

---

[1] The Complaint identifies Defendant by the last name Ramsey, but it appears Rumsey is the proper spelling and the Clerk is directed to amend the caption accordingly.

## REPORT-RECOMMENDATION and ORDER[2]

Plaintiff brings this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that Defendant violated his rights while he was in the custody of the Department of Corrections and Community Supervision ("DOCCS"). Dkt. No. 1, Compl; *see also* Dkt. No. 4. Defendant moves for Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56(a), seeking to dismiss the Complaint based on Plaintiff's failure to properly exhaust his administrative remedies. Dkt. No. 15.[3] The deadline for Plaintiff to respond to the Motion was originally set for March 18, 2024. Dkt. No. 16. Plaintiff did not timely respond, but the Court *sua sponte* extended his time to do so until May 3, 2024. Dkt. No. 17. Plaintiff has still not filed any opposition to the Motion.

For the reasons that follow, the Court recommends that the Motion for Summary Judgment be **GRANTED**.

---

[2] This matter was referred to the undersigned for a report-recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

[3] The Motion also seeks dismissal under Rule 12(b)(6) of the sole remaining claim on the merits. *See* Dkt. Nos. 15 & 15-8 at pp. 3-4 & 8-10. Given the recommended disposition with respect to exhaustion, the Court need not address this issue in detail. Were it to do so, the Court would recommend that this aspect of the Motion be denied. Plaintiff's allegations, though sparse, sufficiently state a claim of racial discrimination to withstand this threshold motion. "To prove an equal protection violation, a plaintiff must demonstrate intentional or purposeful discrimination, directed at an identifiable or suspect class." *Bussey v. Phillips*, 419 F. Supp. 2d 569, 581 (S.D.N.Y. 2006). The facts of the Complaint arguably allege that Plaintiff's packages were destroyed by Defendant out of racial animus. That suffices at this point in the litigation. *Id.* at 581-82.

## I. BACKGROUND

The allegations in the Complaint concern alleged racial discrimination by Defendant while Plaintiff was incarcerated at Mid-State Correctional Facility. Upon review of the Complaint under 29 U.S.C. §§ 1915(e) and 1915A, the District Court found that a Fourteenth Amendment equal protection claim could proceed based on the following facts:

> On or about May 12, 2023, Plaintiff arrived at Mid-State Correctional Facility and was sent a package containing (9) nine books and (3) three magazines. On or about June 20, 2023, Defendant Corrections Officer Ramsey denied Plaintiff his package, called him a racial slur, and stated that he was lucky to be alive because he was dating our women, referring to the fact that Plaintiff is Black and his partner is white. Plaintiff's books and magazines were then destroyed with no record of receiving them.

Dkt. No. 4 at pp. 3 & 10.

## II. SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

3

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22

F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. DISCUSSION

For the reasons which follow, the Court recommends that summary judgment is appropriate based on Plaintiff's failure to properly exhaust his administrative remedies.

**A. Exhaustion of Administrative Remedies**

*1. Exhaustion Procedure*

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some

5

other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Id.* at 524; *see also Ross v. Blake*, 578 U.S. 632, 638 (2016) (stating that the mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). Furthermore, § 1997e(a) requires "proper exhaustion," which means using all steps of the administrative process and complying with "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action. *Howard v. Goord*, 1999 WL 1288679, at *3 (E.D.N.Y. Dec. 28, 1999).

In New York, the administrative remedies consist of a three-step Incarcerated Grievance Program ("IGP"). First, a grievance is submitted to the Incarcerated Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). An inmate must submit a grievance "within 21 calendar days of an alleged occurrence." *Id.* at § 701.5(a)(1). An inmate may request an extension of the time limit within forty-five days of the date of the alleged occurrence. *Id.* at § 701.6(g). The IGRC reviews and investigates the formal complaint and then issues a written determination. *Id.* at § 701.5(b). Second, upon appeal of the IGRC decision, the superintendent of the facility

reviews the IGRC's determination and issues a decision. *Id.* at § 701.5(c). Finally, upon appeal of the superintendent's decision, the Central Office Review Committee ("CORC") makes the final administrative determination. *Id.* at § 701.5(d). Only upon exhaustion of all three levels of review may a prisoner seek relief in federal court. *Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia*, *Porter v. Nussle*, 534 U.S. at 524); *see also Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

An expedited procedure exists for grievances regarding alleged harassment; this procedure also requires that the grievant receive a response from CORC in order to exhaust. 7 N.Y.C.R.R. § 701.8. Pursuant to this expedited procedure, the inmate may first report the incident to the employee's immediate supervisor. *Id.* at § 701.8(a). The inmate's allegations are given a grievance number and the Superintendent (or his designee) must promptly decide whether the grievance, if true, would represent a bona fide case of harassment. *Id.* at §§ 701.8(b) & (c). If it is determined that the grievance is a bona fide harassment issue, the Superintendent must initiate an investigation or request an investigation be undertaken by the Inspector General's Office or the New York State Police. *Id.* at § 701.8(d). The Superintendent is to render a decision on the grievance within 25 days of receipt unless an extension is granted. *Id.* at § 701.8(f). If the Superintendent fails to respond within 25 days, the grievant may appeal the

grievance to CORC "by filing a notice of decision to appeal (form #2133) with the inmate grievance clerk." *Id.* at § 701.8(g). The grievant may appeal the Superintendent's response to CORC by filing a notice of decision to appeal within seven days of receipt of the Superintendent's response. *Id.* at §§ 701.8(h). "Unless otherwise stipulated . . . all procedures, rights, and duties pertaining to the processing of any other grievance as set forth in section 701.5 of this Part shall be followed." *Id.* at § 701.8(i).

*2. The Record Regarding Exhaustion*

The record in this case is not in dispute. Plaintiff filed a grievance regarding alleged harassment involving a package. Dkt. No. 15-4, Tapia Decl., Ex. B. That grievance was dated June 27, 2023 and appears to have been received by the Mid-State Correctional Facility Grievance Office on July 12, 2023. *Id.* The grievance was forwarded to the Facility Superintendent for a response. Tapia Decl. at ¶ 16. On August 8, 2023, Plaintiff signed the Complaint in this action, which was received by the Court and docketed on August 11, 2023. Compl. at pp. 6-7. At the time Plaintiff filed the Complaint he had not yet received a response to his grievance. Tapia Decl. at ¶ 16.

This Complaint was filed two days after a response was due from the Superintendent. As noted above, when no timely response has been received from the Superintendent, the IGP specifically provides for an appeal to CORC. 7 N.Y.C.R.R. § 701.8(g). Plaintiff did not do so here, Dkt. No. 15-2, Seguin Decl. at ¶¶ 6 & 13, and that

8

failure means that Plaintiff did not properly exhaust his administrative remedies. *Torres v. Carry*, 672 F. Supp. 2d 338, 343 (S.D.N.Y. 2009).

> The Second Circuit's recent decision in *Hayes v. Dahlke*, 976 F.3d 259 (2d Cir. 2020) is not to the contrary. There, the Court ruled that the failure of CORC to decide an appeal within the specified thirty day period for doing so rendered an inmate's administrative remedies exhausted. In reaching that conclusion the Court noted 'there simply were no further steps under the regulations that Hayes could have taken to obtain relief on most of his grievances.' Here, however, once the Superintendent failed to timely respond, DOCCS regulations permitted Plaintiff to appeal absent a response, an option he did not avail himself of.

*Lutz v. Francisco*, 2020 WL 9264825, at *4 n.1 (N.D.N.Y. Dec. 10, 2020), *report and recommendation adopted*, 2021 WL 868618 (N.D.N.Y. Mar. 9, 2021) (internal citations omitted).

"A plaintiff must exhaust his administrative remedies *before* filing his initial complaint in federal court." *Lopez v. Cipolini*, 136 F. Supp. 3d 570, 582 (S.D.N.Y. 2015) (emphasis added); *see also Bowie v. Woodruff*, 2019 WL 7606078, at *5 (N.D.N.Y. Sept. 20, 2019), *report and recommendation adopted*, 2019 WL 5445519 (N.D.N.Y. Oct. 23, 2019). "When a prisoner does not properly exhaust his administrative remedies before filing suit, the action must be dismissed." *Mateo v. Alexander*, 2010 WL 431718, at *3 (S.D.N.Y. Feb. 9, 2010). "In this case, Plaintiff . . . sued before there was any decision on his administrative request." *Burgos v. Craig*, 307 F. App'x 469, 471 (2d Cir. 2008). "[W]here a plaintiff's grievance has not been

9

appealed to and decided by the highest body in the administrative process, the plaintiff cannot be said to have exhausted his administrative remedies and his claims are thus properly dismissed by a court." *Jones v. Allen*, 2010 WL 3260081, at *2 (S.D.N.Y. Aug. 9, 2010).

*3. Whether Plaintiff's Failure to Exhaust Administrative Remedies May be Excused*

A prisoner's failure to exhaust administrative remedies may nonetheless be excused if remedies were unavailable to the inmate. *Ross v. Blake*, 578 U.S. at 642. As the Supreme Court stated in *Ross*, "[a]n inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *Id.* The Court provided three potential circumstances in which administrative remedies may be unavailable: (1) where the administrative procedure technically exists but operates as a "dead end - with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) where prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643-44. Plaintiff bears the burden of establishing that the grievance procedures were unavailable within the meaning of *Ross*. *Martin v. Wyckoff*, 2018 WL 7356771, at *5 (N.D.N.Y. Oct. 16, 2018), *report and recommendation adopted*, 2019 WL 689081

(N.D.N.Y. Feb. 19, 2019). Plaintiff makes no argument that the grievance process was unavailable to him and thus cannot carry that burden since he did in fact pursue, at least at the outset, to resolve this issue through the grievance process. *See White v. Williams*, 2016 WL 4006461, at *5 (N.D.N.Y. June 22, 2016), *report and recommendation adopted*, 2016 WL 4005849 (N.D.N.Y. July 25, 2016).

Plaintiff certainly cannot claim that the grievance process was a dead end since he did file a grievance here, and has filed others. *See* Tapia Decl., Ex. B, p. 1. "This shows that Plaintiff did not view the filing of grievances as a dead end." *Walker v. Ball*, 2018 WL 1415212, at *5 (N.D.N.Y. Feb. 16, 2018), *report and recommendation adopted*, 2018 WL 1406632 (N.D.N.Y. Mar. 20, 2018). Nothing in the Complaint suggests that anyone thwarted Plaintiff's ability to fully exhaust the grievance process. That leaves only the question of whether the grievance process was "so opaque" as to make it unavailable to Plaintiff. *Ross v. Blake*, 578 U.S. at 643. Here, that is not the case. "The IGP regulations plainly describe a mechanism for appealing to CORC if a superintendent does not respond to a harassment grievance." *Matthews v. New York State Dep't of Corr.*, 2022 WL 823851, at *7 (N.D.N.Y. Mar. 18, 2022). This is not an opaque requirement under the circumstances. *Shaw v. Ortiz*, 2016 WL 7410722, at *6 (S.D.N.Y. Dec. 21, 2016) (discussing facts under which CORC procedure was not opaque). While other courts have excused the exhaustion requirement when grievances

have not been responded to, those cases are factually distinguishable because they involved inmates who were transferred while their grievance was pending and DOCCS regulations were unclear as to how they should proceed. *See*, *e.g.*, *Robinson v. Ballard*, 2017 WL 979047, at *12 (N.D.N.Y. Feb. 3, 2017), *report and recommendation adopted*, 2017 WL 979039 (N.D.N.Y. Mar. 13, 2017) (citing *Williams v. Priatno*, 829 F.3d 118 (2d Cir. 2016) ("as in *Williams*, Plaintiff in this case was transferred to a new facility before receiving a response to his grievance and failed to receive a response after the transfer."). Here, Plaintiff filed his grievance while incarcerated at Mid-State Correctional Facility. He remained there at the time this action was filed and so had ready access to the Mid-State grievance office to either inquire about the status of his grievance or file an appeal. *See* Tapia Decl. at Ex. A.

For these reasons, the Court recommends that the Motion for Summary Judgment be granted based on Plaintiff's failure to exhaust his administrative remedies.

### IV. CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED**, that the Motion for Summary Judgment (Dkt. No. 15) be **GRANTED**; and it is further

**RECOMMENDED**, that the Complaint be **DISMISSED**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[4] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.</u>** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: June 5, 2024
      Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge

---

[4] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).